# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

KENNETH STATTON,

        Plaintiff,

v.                                                       No. 17-CV-77-JED-JFJ

ALLIED WORLD SPECIALTY
INSURANCE COMPANY,

        Defendant.

## OPINION AND ORDER

**I.**     **Background**

    **A.**     **The New York Suit**

The plaintiff, Kenneth Statton, was employed by M&M Precision Components, LLC (M&M) as President from June 30, 2015 to July 5, 2016, when he was discharged, allegedly for cause. On the same day that M&M terminated his employment, M&M filed suit against Statton in the Southern District of New York. (Doc. 23-6). M&M's initial Complaint in the New York suit alleged that Statton misappropriated M&M's assets, directed M&M's employees to manufacture parts for Statton's personal side business, MotorSports Tulsa LLC (MST), "off-the-books" and to prioritize work for MST rather than for M&M's own customers. (*Id.* at 1). M&M subsequently filed a Second Amended Complaint, which alleges claims against Statton for breach of fiduciary duty, fraud, breach of his employment agreement with M&M and an Asset Purchase Agreement, misappropriation of M&M's trade secrets, breach of representation and warranties under the Asset Purchase Agreement, and declaratory relief. (Doc. 23-9).

Statton asserts that M&M's claims are a sham and were fabricated in an effort to avoid paying Statton $2,000,000 that he was owed. Statton also filed counterclaims against M&M and

third-party claims against David Caputo and Rift Valley Management Partners, LLC (Rift Valley) in the New York suit, based upon allegations that Rift Valley and Caputo attempted to build a case against Statton to terminate him for cause to avoid the $2,000,000 payment. (*See* Doc. 42-4). M&M is a subsidiary of Wingman Holdings, Incorporated (WHI). Rift Valley is alleged to be the ultimate owner of WHI, and it oversees M&M's operations and performance on behalf of WHI. David Caputo is a principal of Rift Valley. Statton's claims against M&M in the New York suit are for breach of the employment agreement, indemnification, and wrongful discharge, and he asserts claims against Rift Valley and Caputo for wrongful discharge and tortious interference with his contracts with M&M. (*See id.*).

The merits of the claims in the New York action are not before this Court, but are before the United States District Court for the Southern District of New York.

  **B.**  **This Declaratory Judgment Action**

Here, Statton seeks a Declaratory Judgment that he was an "insured person" under the Employment Practices Liability Coverage section of an insurance policy issued by the defendant, Allied World Specialty Insurance (Allied) to WHI. Statton seeks determinations that, pursuant to the policy: (1) Allied must indemnify Statton on M&M's claims against him in the New York suit; and (2) Allied is obligated to assume Statton's defense of M&M's claims. (*See* Doc. 2; Doc. 2-1).

Statton has cited two separate policies, one which was effective between September 30, 2015 and September 30, 2016, and another effective from September 30, 2016 to September 30, 2017. He contends that both policies covered WHI as the "Named Insured," M&M as a "Subsidiary of the Insured," and also included Statton, as an "Insured person," because he was an "Executive," "Employee," or "Outside Entity Insured Person" under the Policy. However, the second policy, effective from September 30, 2016 to September 30, 2017, covered Wingman

2

Intermediate Holdings, LLC, which is an entity separate from WHI and of which M&M is *not* a subsidiary, and Statton is not an Insured under the latter policy. (*See* Doc. 36-2). Thus, the only policy at issue here is the policy effective between September 30, 2015 and September 30, 2016, which included WHI as the "Named Insured." (Doc. 36-1).

Allied argues that (1) M&M's claims are not alleged against Statton by or on behalf of an employee and are not the type of claims contemplated by the policy's terms; and (2) the policy does not include a general duty to defend an Insured, and Allied is not obligated to assume Statton's defense under the policy's narrow tender of defense provision.

Both parties moved for summary judgment on these issues, and the Court conducted a hearing on those cross-motions for summary judgment on January 10, 2018.

## II. Summary Judgment Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Anderson*, 477 U.S. at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. A non-movant's evidence is taken as true, with all justifiable and reasonable inferences drawn in the non-movant's favor. *Id.* at 255.

## III. Discussion

The interpretation of an insurance contract is governed by state law and, in a diversity action, the law of the forum state applies. *Houston Gen. Ins. Co. v. American Fence Co., Inc.*, 115

F.3d 805, 806 (10th Cir. 1997). Oklahoma rules of construction accordingly apply. Under Oklahoma law, an insurance policy is a contract to be interpreted as a matter of law, according to its terms. *BP America, Inc. v. State Auto Property & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005). When policy provisions are unambiguous and clear, the contract language is accorded its ordinary, plain meaning, and the contract is enforced carrying out the parties' intentions. *Id.* A policy term will be considered ambiguous only if it can be interpreted as having two different meanings. *Equity Ins. Co. v. City of Jenks*, 184 P.3d 541, 544 (Okla. 1998). An ambiguity may not be created by "using a forced or strained construction by taking a provision out of context, or by narrowly focusing on a provision." *Wynn v. Avemco Ins. Co.*, 963 P.2d 572, 575 (Okla. 1998); *see also Haworth v. Jantzen*, 172 P.3d 193, 196 (Okla. 2006). A court "may not rewrite an insurance contract to benefit either party," and "will not impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered." *BP America*, 148 P.3d at 835-36.

  **A. M&M's claims against Statton are not covered under the terms of the policy.**

  Allied argues that M&M's claims against Statton are not covered claims within the meaning of the applicable policy provisions, such that Allied has no obligation to indemnify Statton on M&M's claims. As is relevant to this dispute, the Employment Practices Liability Coverage section of the policy requires that Allied "pay on behalf of an **Insured** the **Loss** arising from a **Claim** . . . against such **Insured** for any **Wrongful Act**. . . ." (Doc. 36-1 at 50-60). By its terms, that part of the policy covers only claims for a "Wrongful Act." (*See id.*). In relevant part, Wrongful Act is defined as follows:

  **"Wrongful Act"** means any actual or alleged:

  (1) **Discrimination**;
  (2) **Harassment**;

4

> (3) **Retaliation**;
> (4) **Workplace Tort**; or
> (5) **Wrongful Employment Decision;**
>
> committed by an **Insured** *but only if alleged by or on behalf of an **Employee*** or an applicant for employment with the **Company** or an **Outside Entity**.

(*Id.* at 55) (italics added). "Company" is defined as the Named Insured (WHI), any subsidiary of WHI, and WHI or its subsidiary as a debtor or equivalent status. (*See id.* at 26).

Statton argues that M&M's claims in the New York suit are alleged by or on behalf of an employee of WHI for "Harassment," "Retaliation," "Workplace Tort," and "Wrongful Employment Decision[s]," as those terms are defined in the policy. The applicable terms are defined as follows:

> "**Harassment**" means:
>
> (1) sexual harassment, including unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature that is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within the **Company** or **Outside Entity**; or
>
> (2) workplace harassment, including work-related harassment of a non-sexual nature that interferes with performance or creates an intimidating, hostile or offensive working environment within the **Company** or **Outside Entity**.

(Doc. 36-1 at 52).

> "**Retaliation**" means retaliatory treatment of an **Employee** or an employee of an **Outside Entity** alleged to be on account of such individual [exercising legal rights or refusing to violate laws]. . . .

(*Id.* at 54).

> "**Workplace Tort**" means any employment-related:
>
> (1) misrepresentation, defamation (including libel and slander), false arrest, detention, imprisonment, invasion of privacy, negligent evaluation, wrongful discipline or wrongful deprivation of a career opportunity; or

5

(2) negligent retention, supervision, hiring or training, wrongful infliction of emotional distress, mental anguish or humiliation or failure to provide or enforce consistent employment-related corporate policies and procedures;

when alleged as part of a **Claim** for actual or alleged **Wrongful Employment Decision, Discrimination, Harassment**, or **Retaliation.**

(*Id.* at 55).

"**Wrongful Employment Decision**" means any actual or alleged:

(1) wrongful termination, dismissal, or discharge of employment, demotion, denial of tenure, or failure to hire or promote; or

(2) breach of any implied employment contract or obligation, including but not limited to any such obligation arising out of any personnel manual, employee handbook or policy.

(*Id.* at 55-56).

M&M's claims in the New York action are clearly brought *on its own behalf*, and are not claims alleged by or on behalf of any employee. (*See* Doc. 23-9). Notwithstanding Statton's request that the Court engage in a strained reading of the "Harassment" and "Retaliation" definitions, M&M's claims in the New York action are *not* claims for harassment or retaliatory treatment of an employee. Statton also argues that M&M's breach of contract claims are covered by the policy's "Wrongful Employment Decision" provision. However, those claims are for Statton's alleged breach of express provisions of written contracts – Statton's employment agreement and the Asset Purchase Agreement – not for breach of an "implied contract." Moreover, even if such claims were contemplated by the "Wrongful Employment Decision" provision, Statton's contracts were with M&M, not with an M&M employee, such that those breach of contract claims are not "alleged by or on behalf of an Employee," and are not claims within the definition of "Wrongful Act." (*See* Doc. 36-1 at 55-56). Similarly, M&M's claims do not fall within the definition of claims for "Workplace Tort," as they are not "alleged as part of a Claim

for actual or alleged Wrongful Employment Decision, Discrimination, Harassment, or Retaliation." (*Id.* at 55).[1]

Moreover, there is no genuine dispute that M&M is the only party seeking damages against Statton, and no employee is identified as a claimant against Statton or a beneficiary of the damages that M&M seeks for itself. M&M's claims are premised upon allegations that Statton misappropriated M&M's assets, directed M&M's employees to prioritize manufacturing for Statton's business, MST, over M&M's customers, and took measures to ensure that his misconduct would not be reported to M&M's ownership. M&M's Second Amended Complaint in the New York suit asserts claims for damages against Statton for breach of fiduciary duty (Count I), fraud (Count II), breach of his employment agreement with M&M and breach of the Asset Purchase Agreement (Count III), misappropriation of M&M's trade secrets (Count IX), breach of representation and warranties under the Asset Purchase Agreement (Count X). (Doc. 23-9). M&M also seeks: a declaratory judgment that Statton was properly terminated for cause under the employment agreement (Count V); a permanent injunction against Statton (Count VII); and specific performance under confidentiality provisions of the agreements (Count VIII). (*Id.*).

On each of the damages counts, M&M expressly alleges that *it* was damaged, and *it* seeks to recover damages on its own behalf. (*See id.* at ¶¶ 150, 158, 167, 207, 219; *see also id.*, "Prayer for Relief" at pp. 39-42). M&M does not allege that it incurred or paid any damages to any employee for any "Employment Practices Liability" or any conduct that would fall within the

---

[1] Statton has asserted that M&M's claims are based upon factual assertions by Caputo (an executive of Rift Valley) and a "whistleblower" employee of M&M. However, it is clear that M&M's claims are not brought by or on behalf of the employee or Caputo, but by M&M itself. (*See* Doc. 23-9). To construe the Wrongful Act provisions as Statton requests would be to strain the policy's plain terms and coverage intention in a manner that is not contemplated under the law or any reasonable or justifiable inference that could be drawn from the evidence in this case.

policy's definition of "Wrongful Act," and M&M does not seek to recover any damages by or on behalf of any employee. (*See id.*). Similarly, M&M's requests for equitable relief are for M&M, not for any employee. (*See id.* at ¶¶ 174, 194, 201; *see also id.*, "Prayer for Relief" at pp. 39-42). Simply put, M&M's claims are not "Claims" for "Wrongful Act[s]" alleged "by or on behalf of an Employee or applicant for employment," as defined and contemplated under the terms of the policy.

The terms of the policy's Employment Practices Liability Coverage are not susceptible of two different meanings, and are thus unambiguous. The Court will not create an ambiguity by applying a forced or strained construction of the policy or by taking its provisions out of context. *See Wynn*, 963 P.2d at 575; *Haworth*, 172 P.3d at 196. Likewise, the Court will not create coverage where the policy's terms clearly are not intended to cover M&M's claims. *BP America*, 148 P.3d at 835-36. Accordingly, Allied is entitled to judgment as a matter of law on Statton's claim for a declaratory judgment that he is entitled to indemnity on M&M's claims.

**B.     Allied has no duty to defend Statton or to assume his defense.**

Statton contends that, regardless of whether the claims are covered, Allied is obligated under the terms of the policy to defend him against M&M's claims. M&M sued Statton in the New York action on July 5, 2016, and Statton was served with process on July 7, 2016. (*See* Doc. 42-6). Allied received notice of M&M's claims against Statton by letter from Statton's counsel five months later, on December 22, 2016, and Statton's counsel subsequently claimed coverage from Allied under the Employment Practices Liability Coverage section for M&M's claims against him in the New York action. Statton asserts that, as a result of such notice and demands, Allied is obligated under the policy to assume his defense.

8

Allied argues that Statton's notices of the claims did not qualify as a "tender of defense" under the specific terms of the applicable policy provisions. The first page of the policy package provides:

> THE INSURER DOES NOT ASSUME THE DUTY TO DEFEND ANY CLAIM UNDER THIS POLICY; HOWEVER, IF THE INSURED TENDERS THE DEFENSE OF ANY CLAIM TO THE INSURER *IN ACCORDANCE WITH THE TERMS HEREIN*, THE INSURER SHALL ASSUME THE DEFENSE OF SUCH CLAIM.

(Doc. 36-1 at 2) (italics added). The Employment Practices Liability Coverage section similarly provides that the "Insurer does not assume any duty to defend any Claim under this Coverage Section." (*Id.* at 57). That section also contains a provision titled "Right to Tender Defense," which provides in pertinent part:

> (1) Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of a **Claim** to the **Insurer**.
>
> (2) This right shall be exercised by the **Named Insured** on behalf of all **Insureds** by providing written notice to the **Insurer**. The **Insured's** right to tender the defense of a **Claim** *shall terminate if it is not exercised within fifteen (15) days of the date the **Claim** is first made* against an **Insured**…. In the event the **Insureds** have complied with all of the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent.

(*Id.* at 58-59) (italics added). "A **Claim** shall be deemed first made when any **Insured** first receives notice of the **Claim**." (*Id.* at 51).

The Named Insured (WHI) did not tender Statton's defense of M&M's claims against him as required by the policy. Even assuming that Statton, as an Insured, had an independent right to tender his defense under the policy, it is undisputed that he failed to do so until months after the 15 days had passed, and he accordingly did not trigger the specific policy terms requiring the insurer to assume the defense of a claim. (*See id.* at 2, 57-59). Because Statton was served with process on July 7, 2016, that is the date on which the claim was first made and which triggered the

9

15-day deadline for tendering defense to Allied under the plain and unambiguous terms of the policy. (*Id.* at 58-59; *see* Doc. 42-6). It is undisputed that no tender of defense was made in accordance with the unambiguous policy terms applicable to tender of defense, and Allied did not receive notice until months after the 15-day deadline had passed.

Statton has not provided any on-point authority involving tender of defense insurance policy terms like the unambiguous terms set forth in the policy in this case. His counsel has cited authorities regarding notice of a claim, but not a separate exercise of a right to tender a defense which must be made within a specific time. Moreover, the Court is unpersuaded by Statton's conflation of the policy's separate requirements for notice of a claim for purposes of potential coverage of claims (which notice period is not in dispute in this case) and the contractually-specified deadline for tender of defense under the applicable policy. Notice of a claim under the policy, which is a separate requirement governing coverage obligations, if any, includes a period of 90 days after the end of the policy period, as well as a "discovery period." In contrast, the terms of the policy regarding a duty to defend state that there is not any general duty to defend and that Allied will assume a defense only if properly and timely tendered in accordance with the specific terms of the tender of defense provision, which includes a very clear 15-day deadline. The assumption of defense terms had no reference to a notice of the claim; those provisions are separate. (*See id.*).

The Court has examined the authorities cited by Statton, and they are distinguishable. For example, *Financial Ind. Corp. v. XL Specialty Ins. Co.*, 285 S.W.3d 877 (Tex. 2009) involved a policy that required a notice of claim be made "as soon as practicable" and "[did] not contain a clear-cut reporting deadline." *Id.* at 878. Even assuming that the issue in this case involved notice of a claim, rather than the separate requirement for tender of a defense, the tender of defense

10

requirements at issue here do impose a clear-cut deadline for tendering a defense. Another Texas Supreme Court case cited by Statton involved a notice of claims provision that required notice of a claim "as soon as practicable . . . , but in no event later than ninety (90) days after the expiration of [a] Discovery Period." *See Prodigy Comm's Corp. v. Agricultural Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 377 (Tex. 2009). In that case, the insured gave the insurer notice within the 90-day reporting deadline, but the insurer denied the claim based on its argument that notice was not given "as soon as practicable." *Id.* at 382-83. Again, the policy provision there has no relevance or similarity to the tender of defense provision at issue in this case.

During arguments, Statton's counsel also cited a recent decision by District Judge Claire V. Eagan, *Doug Schwegman v. Continental Cas. Co.*, 16-CV-730-CVE, 2017 WL 1826697 (N.D. Okla. May 5, 2017) (unpublished), in support of Statton's argument that Allied has a duty to defend Statton in this case. However, the policy at issue in that case imposed upon the insurer the "duty to defend the plaintiff from claims that fall under the policy." *See id.* at *2 (citing Doc. 18-2 at 12). Specifically, the policy in that case included specific provisions providing that "[t]he insurer shall have the right and duty to defend any Claim against the Insureds seeking sums payable under this Policy, even if any of the allegations of the Claim are groundless or false." (*See* Doc. 18-2 at 12 in 16-CV-730-CVE; *see also id.* at 49). There is no indication that the duty to defend had a time imposition like the assumption of defense provisions contained in the Allied policy. Also, as noted, the Allied policy expressly disclaims any automatic duty to defend any claim against an insured.

Allied is accordingly entitled to summary judgment on Statton's duty to defend claim.

## IV. Conclusion

Upon consideration of the parties' pleadings, arguments, authorities, and evidentiary submissions, including the unambiguous provisions of the applicable insurance policy, there is no genuine dispute of material fact, and the defendant is entitled to judgment as a matter of law on the plaintiff's declaratory judgment claims. Allied's Motion for Summary Judgment (Doc. 42) is **granted**, and Statton's Motion for Summary Judgment (Doc. 23) is **denied**. A Judgment for Allied and against Statton on Statton's declaratory judgment complaint will be entered.

In addition, Statton's motion for joinder of WHI as a defendant to this insurance coverage dispute (Doc. 22) is **denied**. Even had WHI been added for purposes of Statton's argument that WHI was required to demand a defense from Allied, any tender of defense on behalf of Statton would have been untimely under the applicable policy provisions. Allied's motion to strike (Doc. 40) Statton's reply in support of his summary judgment motion and Allied's alternative motion to file a surreply (Doc. 41) are **moot** because Statton's summary judgment motion was denied under the terms of the policy, notwithstanding the new evidentiary materials submitted with his reply.

DATED this 17th day of January, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE